## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff-Respondent,** | § | |
| | § | |
| **V.** | § | **CRIMINAL ACTION NO. H-03-346-3** |
| | § | |
| **MAXIMIANO DeLEON,** | § | **CIVIL ACTION NO. H-06-4120** |
| | § | |
| **Defendant-Movant** | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is Movant Maximiano DeLeon's Motion to Vacate, Set Aside, or Correct Sentence (Document No. 109),[1] the United States' Response to DeLeon's Motion, Motion to Dismiss, and Motion for Summary Judgment (Document No. 119), and Movant's Motions to Reduce Sentence (Document Nos. 128 & 129).    After reviewing Movant's § 2255 Motion, the Government's Response and Motion to Dismiss, Movant's Motions to Reduce Sentence, the record of the proceedings before the District Court in the underlying criminal case, and the applicable case law, the Magistrate Judge  RECOMMENDS,  for the reasons set forth below, that the Government's Motion to Dismiss (Document No. 119) be  GRANTED,  that Movant's Motion to Vacate, Set Aside, or Correct Sentence (Document No. 109) and Motions to Reduce Sentence (Document Nos. 128 & 129) all be  DENIED,  and that this § 2255 proceeding be  DISMISSED.

---

[1] Maximiano DeLeon' s Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-06-4120 and at Document No. 109 in Criminal Action No. H-03-346-3.   References hereafter will be to the Criminal Document numbers unless otherwise indicated.

I.      **Procedural History**

Movant Maximiano DeLeon ("DeLeon"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255. This is DeLeon's first attempt at § 2255 relief.

On September 3, 2003, DeLeon, John Callen, Jr., and Fidencio Chapa, Jr. were charged by Indictment with drug trafficking activities. (Document No. 1). DeLeon was charged with conspiracy to possess with intent to distribute five (5) kilograms or more of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(ii) (Count One), possession with intent to distribute five (5) kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii) and 18 U.S.C. § 2 (Count Two), and laundering of monetary instruments in violation of 18 U.S.C. §§ 2 and 1956(a)(1)(A)(i) (Count Three). (Document No. 1). On October 31, 2003, DeLeon, pursuant to a written Plea Agreement, pleaded guilty to Count One of the Indictment. (Document No. 42, Transcript of Re-Arraignment; Document No. 43, Plea Agreement). Under the written Plea Agreement pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, the Government agreed to dismiss the remaining counts of the Indictment at sentencing, not oppose a reduction for acceptance of responsibility, and recommend that DeLeon be sentenced at the low end of the guideline range. DeLeon agreed to cooperate, debrief, and if necessary, to testify under U.S.S.G. 5K1.1. In addition, DeLeon agreed to forfeiture of property. DeLeon waived his appellate rights, including the right to collaterally attack his plea, conviction and sentence. With respect to the waiver of appeal rights, including the right to bring a § 2255 motion, the written Plea Agreement provides in pertinent part:

Waiver of Right of Appeal

10.    The defendant understands that the sentence to be imposed is within the discretion of the sentencing judge.  If the Court should impose any sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw a guilty plea and will remain bound to fulfill all of the obligations under this agreement.  The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed.  Knowing that, the defendant waives the right to appeal the plea, conviction and sentence (or the manner in which it was determined) on the grounds set forth in Title 18, United States Code, Section 3742, except for an upward departure.  This agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b).  The defendant is also aware that the United States Constitution and the laws of the United States, including Title 28, United States Code, Section 2255, afford the defendant the right to contest or "collaterally attack" his conviction or sentence after his conviction has become final.  Knowing that, the defendant knowingly waives his right to contest or "collaterally attack" his plea, conviction and sentence by means of any post-conviction proceeding.  This agreement **does not** affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(B).

11.    In agreeing to this waiver, the defendant is aware that a sentence has not yet been determined by the Court.  The defendant is also aware that any estimate of the probable sentencing range under the sentencing guidelines that the defendant may have received from the defendant's counsel, the United States or the Probation Office, is a prediction, not a promise, and is not binding on the United States, the Probation Office or the Court.  The United States does **not** make any promise or representation concerning what sentence the defendant will receive.  Realizing the uncertainty in estimating what sentence the defendant will ultimately receive, the defendant knowingly **waives** his right to appeal in exchange for the concessions made by the United States in this plea agreement.

12.    The United States reserves the right to carry out its responsibilities under guidelines sentencing.  Specifically, the United States reserves the right: (a) to bring its version of the facts of this case, as well as all relevant conduct, including its file and any investigative files to the attention of the Probation Office in connection with that office's preparation of a presentence report; (b) to dispute sentencing factors or facts material to sentencing; (c) to seek resolution of such factors or facts in conference with defendant's counsel and the Probation Office and (d) to file a pleading relating to these issues, in accordance with Section 6A1.2 of the Sentencing Guidelines and Policy Statements.

3

The defendant understands that the guideline range under the Sentence Guideline will be determined by the United States Probation Department and that their determination is **not** part of this agreement.

13.    This plea agreement binds **only** the United States Attorney's Office for the Southern District of Texas and the defendant; it does **not** bind any other United States Attorney. (emphases in original) (Document No. 43, pp. 10-11).

In addition, DeLeon and his attorney, Sam Adamo, executed an addendum to the written Plea Agreement, which states in pertinent part:

I have fully explained to the Defendant, Maximiano DeLeon, his rights with respect to the pending indictment. Further, I have reviewed the provisions of the <u>Sentencing Guidelines</u> <u>and</u> <u>Policy</u> <u>Statements</u> and I have fully explained to the Defendant the provisions of those guidelines which may apply in this case. I have carefully reviewed every part of this plea agreement with the Defendant. To my knowledge, the Defendant's decision to enter into this agreement is an informed and voluntary one.

I have consulted with my counsel and fully understand all my rights with respect to the indictment pending against me. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the <u>Sentencing</u> <u>Guidelines</u> <u>and</u> <u>Policy</u> <u>Statements</u> which apply in my case. I have read this agreement and carefully reviewed every part of it with my attorney. I understand this agrement and I voluntarily agree to it. (Document No. 43, pp. 13-14).

At DeLeon's October 31, 2003, Rearraignment, the Court engaged in an extended colloquy with DeLeon to ensure that he had read the written Plea Agreement and had conferred with his attorney about the contents of the Plea Agreement. The Court also advised DeLeon of the consequences of his plea, including the sentence he faced, the manner in which his sentence would be calculated, the factual basis of the plea, and the waiver provisions:

The Court:    Mr. Isaacs, would you tell me just in general the terms of the written plea agreement.

Mr. Isaacs:    Yes, your Honor.

This will be a plea pursuant to 11(c)(1)(A) and (B). The Defendant

4

will be pleading to Count 1 which is a conspiracy to distribute a Schedule II controlled substance. In this instance, it's cocaine. The Government does not oppose the Defendant receiving credit for acceptance of responsibility if he qualifies under the guidelines.

The Government will reserve the right to file a motion for a downward departure for substantial assistance pursuant to either Section 5K1.1 of the guidelines or Rule 35 of the Federal Rules of Criminal Procedure if the Government determines in its sole discretion that the Defendant has provided any assistance.

The Defendant waives his appellate rights except he retains the right to appeal an upward departure and agrees not to assert any constitutional right with regard to any questions in this or any other judicial hearing regarding the facts.

After sentencing, the Government will motion the Court to dismiss the remaining count. Also, the Government agrees not to pursue any other offenses arising out of this investigation as to this Defendant.

The Court:     All right. Mr. DeLeon, does that sound like a fair and accurate summary of the written plea agreement that you propose to enter into this morning?

Defendant:     Yes, Your Honor.

Mr. Isaacs:     Your Honor, one other matter which is not in the summary here: There is a forfeiture provision in there and it's stated in there that any interest that he may have in the cash that was seized that Mr. DeLeon will relinquish any rights to that.

The Court:     Is that correct?

Defendant:     Yes, Your Honor.

The Court:     Have you had a chance to read over this - this plea agreement?

Defendant:     Yes, Your Honor.

The Court:     And have you discussed it with Mr. Adamo, your attorney?

Defendant:     Yes, Your Honor.

The Court:     Do you feel like you understand everything in this written plea agreement?

Defendant:     Yes, Your Honor.

The Court:     Do you understand all the agreements that you're making?

Defendant:     Yes, Your Honor.

The Court:     And all the agreements that the Government is making?

Defendant:     Yes, Your Honor.

The Court:     Are there any other or different promises or assurances that were made to you by anybody that persuaded you to enter into a plea of guilty in this case that didn't get written down in that written plea agreement?

Defendant:     No.

The Court:     So, all of the understanding that you have from the Government, all of the promises that were made to you, all of those have been written down in the written plea agreement?

Defendant:     Yes, Your Honor.

The Court:     All right.  Are you - has anybody tried to force you to plead guilty in this case?

Defendant:     No, Your Honor.

The Court:     Are you pleading guilty because you are guilty?

Defendant:     Yes, ma'am.

The Court:     All right.  Do you understand that the terms of the written plea agreement will be binding upon you and upon the Government, that they're not binding upon me?

Defendant:     Yes, Your Honor.

The Court:     All right.  So, it could be the Government makes motions or makes recommendations to me in an effort to fulfill its end of the bargain, but

|  | I don't have to grant those motions or follow those recommendations. Do you understand that? |
|---|---|
| Defendant: | Yes, Your Honor. |
| The Court: | And if I don't follow those recommendations or grant those motions, it could be you would get a sentence that's more severe than the one you would get if I did.  Do you understand that? |
| Defendant: | Yes, ma'am. |
| The Court: | And if that should happen, do you understand that you will not be given a chance to withdraw your plea of guilty? |
| Defendant: | Yes, Your Honor. |
| The Court: | All right.  Do you understand that the offense to which you are pleading guilty is a felony offense? |
| Defendant: | Yes, ma'am. |
| The Court: | And if you - that if your plea is accepted, you will be adjudged guilty of that offense? |
| Defendant: | Yes. |
| The Court: | And such adjudication may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess firearms? |
| Defendant: | Yes, Your Honor. |
| The Court: | All right.  Are you a citizen of the US? |
| Defendant: | Yes, Your Honor. |
| The Court: | All right.  I want to go over with you now the maximum penalties you're facing as a result of your plea of guilty this morning. |
|  | Now, you are pleading guilty to Count 1 which is a - accuses you of conspiracy to distribute a Schedule II controlled substance, cocaine, which is a violation of 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846. |

That carries with it a mandatory minimum ten years up to life imprisonment and a fine of more than $4 million - of not more - sorry, of not more than $4 million?

Defendant:     Yes, Your Honor.

The Court:     Now, by "mandatory minimum" is meant that no matter what your guideline range may work out to be, the Court would be under the obligation to give you a sentence of at least ten years.  Do you understand that?

Defendant:     Yes, Your Honor.

The Court:     All right.  And then in addition to the prison time and the fine, there would also be supervised release of at least five years; and along with that supervised release, there would be certain conditions of supervised release that you would be obliged to follow.

               If you failed to follow those, you could be put back into prison for some additional period of time without any credit for the time you had already been in prison, without any credit for the time that you had been on supervised release.  And then there would be a special assessment of $100.

               Do you understand that all of those taken together, the prison time, the fine, the supervised release, and the conditions of supervised release and the special assessment, those are the maximum possible penalties you're facing as a result of your plea of guilty this morning?

Defendant:     Yes, ma'am.

The Court:     Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow to determine what the sentence will be in a criminal case.  Have you and Mr. Adamo talked about how those guidelines may apply in your case?

Defendant:     Yes, Your Honor.

The Court:     Do you understand that today I do not know what your sentence will be?

8

Defendant:      Yes, Your Honor.

The Court:      And I won't know until after a probation officer has done an investigation of your case and has written a presentence report that will assist me in sentencing.  Do you understand that?

Defendant:      Yes.

                              *                                        *

The Court:      And it could be that, when I pronounce sentence, the sentence I give you is more severe than the one that you and Mr. Adamo were expecting that I would give you when all you were discussing how the guidelines might apply in your case.  Do you understand that?

Defendant:      Yes, ma'am.

The Court:      And if that should happen, if I should give you a sentence that is more severe than the one you're expecting, do you understand you will not be given a chance to withdraw your plea of guilty?

Defendant:      Yes, ma'am.

The Court:      All right.  Do you further understand that, after the guideline range has been determined, under some circumstances, the Court would have the authority to depart from the guidelines and to impose a sentence that is either more severe or less severe than the sentence called for by the guidelines.  Do you understand?

Defendant:      Yes, Your Honor.

The Court:      All right.  Do you also understand that in the federal system parole has been abolished.  So that, if you're sentenced to prison, you will not be released on parole.  Do you understand?

Defendant:      Yes, ma'am.

The Court:      All right.  Do you also understand that, under some circumstances, you or the Government would have the right to appeal any sentence that I impose?

Defendant:      Yes, Your Honor.

**The Court:**     **But under the terms - do you also understand under the terms of the written plea agreement, you will be waiving or giving up virtually all your rights to appeal any sentence that I impose?  Do you understand that?**

**Defendant:**     **Yes, Your Honor.**

The Court:     And any right you have to appeal would be a right that has specifically been set out in that written plea agreement.  Do you understand that?

Defendant:     Yes, ma'am.

The Court:     Do you also understand that the Government is not waiving its right to appeal any sentence I impose?

Defendant:     Yes, ma'am.  (emphasis added) (Document No. 85, pp. 5-15).

With respect to the factual basis for the plea, the record shows:

The Court:     Mr. Isaacs, tell me what it is the Government is prepared to prove if we went to trial in this case.

Mr. Isaacs:     Yes, Your Honor.  I would state also that we have stated out in very extensive detail on this summary sheet.  I will try to summarize this. Defense has also gotten a copy of it, and they have read it.

I would anticipate that witnesses would testify that beginning sometime in July of 2003 the DEA - I'm sorry, the Bureau of Immigration & Customs Enforcement, familiarly known as BICE, identified Mr. DeLeon as a trafficker in cocaine.

As a result, they began to set up surveillance on him.  They had located his address at 6219 Pine Way and also determined that Mr. DeLeon had access to a storage unit, a Space Saver storage unit, which was located at 6333 South Loop E here in Houston.

During the period of July up and through August the 5th, there was surveillance, both a video and actual surveillance, of Mr. DeLeon going in and out of that storage unit.  On August the 5th of 2003, while conducting their surveillance, agents saw Mr. DeLeon go to the storage unit.

At approximately 1:52 p.m., they saw him use a key to open the unit

10

and go inside of the Space Saver unit.  They then observed him come back out with a black gym bag and put it into the trunk of his vehicle. He was subsequently followed where he met with Co-Defendant Mr. Fidencio Chapa at 59 - I'm sorry, let me go back.  They saw him meet with Mr. Chapa at a Wendy's Restaurant located on Louetta Drive and Cypress.  There they saw him meet up with Mr. Chapa where they exchanged vehicles.  He took possession of Mr. Chapa's vehicle and gave Mr. Chapa his vehicle.

Mr. Chapa was then followed driving the vehicle which was formerly in the possession of the Defendant, go to an address over in Cypress in Harris County.  There they saw Mr. Chapa go into that residence. He stayed in there for a while.  He subsequently came back out and he was stopped by task force officers who asked if they could get a consent to search his vehicle.

Mr. Chapa gave them written consent to search the vehicle which was a blue Mercury.  And inside of it, they found in a black Sharper Image bag $247,000 in United States currency in the trunk.  Mr. Chapa was then questioned about this money.

Mr. Chapa then indicated – that, first, he denied ownership and then subsequently he stated that Mr. DeLeon first delivered to him at the Wendy's Restaurant approximately six - at first delivered drugs, I guess, to him on approximately six weeks earlier and that this - the delivery was the fourth delivery in exchange - which had occurred over - within the previous six weeks.

Mr. Chapa stated he usually drives to the residence which is a residence which is occupied by co-Defendant John Callen, Jr.

As a result of the statements that were given by Mr. Chapa, the agents then went back to that residence which was in Cypress, the 59 Windcrest Falls.  And there they went in and they got a consent to search.  They found an additional 14 kilos of cocaine and one kilo of heroin.

In addition, they found several firearms.  They seized an additional $170,000 in cash, and there was about 14 live marijuana plants growing in the back yard of that house.  At the same time, Mr. DeLeon was then followed back to the storage unit.  There he was approached by agents as he was attempting to get inside of his storage unit.

11

He was asked - he was read - he was - they told him that he would - they were being investigated for drugs.  He was read his Mirandas.  He then gave consent and they went inside the storage unit.  He told them before they went inside the storage unit that there would be additional cocaine and some firearms.

A subsequent search of that facility indicated that they found an additional three kilograms of cocaine, which tested positive for the cocaine, and three firearms.  Subsequently, Mr. DeLeon advised the task officers that he was responsible for providing two kilograms of cocaine to Chapa on that day to complete a 15-kilogram transaction that Mr. Chapa had coordinated.

There are other factors, Your Honor, but I think that that fits the elements of this offense.

The Court:     All right.

Mr. DeLeon, tell me in your own words what it is you did to commit the crime that you're pleading guilty to this morning.

Defendant:     Your Honor, I was given my key of the storage room to Chapa and - I mean, a man called Beto and they were using my storage.  When I find out that Chapa got caught, Beto called me and I went to the storage and I tried to break the lock because I don't have no key because they had been using my storage room.

So, when I tried to break it, the woman that was going to help me, the owner, they come and arrest me; and I tell them the truth.  I tell them, "Well, they just tell me to come and get a bag out of there and I think they said it was two keys in there."  And plus, there's some rifles over there, you know, the storage over there in the room.

And what happened is that they took me - before they open it, they open it and they find not two, they find three.  So, that was my story.  From there, they just took me over here and I'm in jail.

The Court:     You knew that they - that they were using your storage unit to - to store narcotics and related things?

Defendant:     Yeah.  The thing is that a long time ago, I owe these people some money; and they really put me some pressure to let them use it or put it in my house.  But since I know about drugs and I don't want to get

in trouble no more - I promised my wife and my kids - I tell them, "I don't want to put nothing in my house."  I said, "You can use my storage but that's it."

And from there, they just got the keys and I never have the key.  I went one time and I took a bag the day that I went to give - Chapa needed to use my car because they said they can give me money to use my car because I sell cars.  And I tell them, "Well, if you can buy my car, I'll let them use it."

So, they were going to buy my car, too.  So, what they have happened is that - but at that time he's supposed to bring some money back and give it to Beto and park the car in Home Depot; and then they going to give me my car back.  But since they - it's in the storage and it's in my name, so I'm guilty automatic.

The Court:      All right.  All right.  Maximiano DeLeon, how do you plead to Count 1 of the indictment, guilty or not guilty?

Defendant:      Guilty, ma'am.  (Document No. 85, pp. 16-21)

Prior to sentencing, a pre-sentence investigation report ("PSR") was prepared (Document No. 62), to which DeLeon filed written objections.[2]  (Document No. 67).  Pursuant to the PSR, DeLeon's guideline sentencing range was calculated as follows:  (1) DeLeon had a base offense level of 34.  (2) Pursuant to U.S.S.G. § 2D1.1(b)(1) (possession of dangerous weapon including a firearm),  his offense level was increased by two levels.  (3) Because DeLeon accepted responsibility and did so in a timely manner pursuant to U.S.S.G. § 3E1.1(a) and (b), his offense level was reduced three levels.  (4) With an adjusted offense level of 33, and with a criminal history of category IV, DeLeon had a guideline sentence range of 188 to 235 months imprisonment.  Prior to sentencing, the

---

[2] DeLeon first objected to the quantity of drugs for which the PSR held him accountable. Next, he objected to the two-level increase pursuant to U.S.S.G. 2D1.1(b)(1).  Finally, he objected to not being given a two-level decrease  pursuant to U.S.S.G. 2D1.1(a)(3)  based on his role as a minor participant.  According to DeLeon, his adjusted offense level should have been 25.  (Document No. 67)

13

Government filed for a downward departure (Document No. 105), which was granted (Document No. 106). DeLeon was sentenced to 100 months, followed by five years of supervised release and a $100 special assessment. (Document No. 108). Judgment was entered on January 26, 2006. (Document No. 106). DeLeon's conviction became final on February 10, 2006. On December 27, 2006, DeLeon filed the instant motion, in which he alleges four grounds for relief: (a) the Court should have granted him credit for a mitigating role in the offense; (b) the Court improperly assessed additional two points to his guideline offense level for weapons found in the storage unit with drugs; (c) his counsel was ineffective because he did not properly object to the admissibility of the weapons found in the storage unit with drugs; and (d) the drug amount used to calculate DeLeon's guideline range was not proved to a jury beyond a reasonable doubt. (Document No. 109). The Government has answered and has moved to dismiss the instant action on the ground that DeLeon, as part of his written Plea Agreement, waived the right to bring a motion under § 2255, and that his written Plea Agreement should be enforced. (Document No. 119). The Government further argues that even assuming that DeLeon had not waived his right to pursue relief under § 2255, he nevertheless is not entitled to relief on his claim. DeLeon has also moved to reduce his sentence. (Document Nos. 128 & 129) This § 2255 proceeding is ripe for ruling.

## II.      Discussion

### A.      Waiver

A defendant's waiver of his statutory right to collaterally challenge his conviction with a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255, like a waiver by a defendant of his right to appeal, is generally enforceable if the waiver is both knowing and voluntary. *United*

*States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255); *United States v. McKinney*, 406 F.3d 744, 746-47 & n.5 (5th Cir. 2005) (enforcing, post-*Booker*, a waiver of appeal right that was signed prior to the issuance of *Booker*). Such waivers, however, do not "preclude review of a sentence that exceeds the statutory maximum." *United States v. Hollins*, 97 Fed.Appx. 477, 479 (5th Cir. 2004). In the context of a plea agreement waiver, a sentence exceeds the statutory maximum only when it exceeds the maximum allowed by statute. *United States v. Bond*, 414 F.3d 542, 546 (5th Cir. 2005); *United States v. Cortez*, 413 F.3d 502, 503 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 502 (2005). In addition, when a defendant alleges that his counsel was ineffective in negotiating a plea agreement, such ineffectiveness claims are not barred by the waiver. *See United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002) ("[i]neffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself."); *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001) ("[W]e hold that a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver. Collateral attacks based on ineffective assistance of counsel claims that are characterized as falling outside that category are waivable."), *cert. denied*, 534 U.S. 1085 (2002); *DeRoo v. United States*, 223 F.3d 919, 924 (8th Cir. 2000) ("A defendant's plea agreement waiver of the right to seek section 2255 post-conviction relief does not waive defendant's right to argue, pursuant to that section, that the decision to enter into the plea was not knowing and voluntary because it was the result of ineffective assistance of counsel."); *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000) (where the ineffectiveness claims raised in a § 2255 motion relate to counsel's performance at sentencing, the defendant's plea agreement waiver of this right to

15

challenge his conviction in a § 2255 proceeding is enforceable), *cert. denied*, 531 U.S. 1175 (2001).[3]

Ineffective assistance of counsel claims, including challenges to counsel's performance at sentencing,

which do not relate to the validity of the Plea Agreement and waiver, can be waived. *White*, 307 F.3d

at 343. Otherwise, "[i]f ineffective assistance of counsel claims were immune from waiver, any

complaint about the process could be brought in a collateral attack by merely challenging the

attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so

easily evaded." *White*, 307 F.3d at 344.

Here, the record shows that, pursuant to a written Plea Agreement, DeLeon waived his right

to appeal and waived his right to collaterally attack his plea, conviction and sentence. DeLeon signed

and swore to the terms of the Plea Agreement. As discussed above, the written Plea Agreement was

explicit with respect to the waiver of the right to appeal and to pursue collateral relief. (Document

No. 43, ¶ 10).

In addition, at his Rearraignment on October 31, 2003, the Court engaged in an extended

colloquy to ensure that DeLeon was competent to participate in the Rearraignment proceedings, had

read the written Plea Agreement, discussed the contents of the written Plea Agreement with counsel

---

[3] There are some other limited situations in which a plea agreement waiver of the right to seek collateral review under § 2255 is not enforceable, such as where the sentence imposed violates the terms of the plea agreement, the sentence is illegal, or the Government has suppressed exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *See DeRoo*, 223 F.3d at 923 ("defendants cannot waive their right to appeal an illegal sentence or a sentence imposed in violation of the terms of an agreement"); *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996) ("the waiver of a right to appeal may be subject to certain exceptions such as claims involving a breach of the plea agreement, racial disparity in sentencing among codefendants or an illegal sentence imposed in excess of a maximum statutory penalty"), *cert. denied*, 520 U.S. 1132 (1997); *United States v. Hollins*, 97 Fed. Appx. 477, 479 (5th Cir. 2004) (waiver does not preclude review of a sentence that exceeds the statutory maximum). None of these circumstances is at issue in this proceeding.

and understood the agreement, that no promises had been made to induce his plea, that he understood the offense to which he was pleading guilty, the maximum sentence he faced, the rights he was giving up by virtue of his guilty plea, and the factual basis of the charges and his guilty plea. The Court also advised DeLeon about the waiver provisions and the consequences of his Plea, including the sentence he faced. Based on DeLeon's responses during the lengthy colloquy, Judge Harmon concluded that DeLeon's guilty plea and waiver of his right to appeal and collaterally attack his convictions and/or sentence was knowing and voluntary.

DeLeon does not allege that his Plea Agreement or the waivers contained therein were not knowing and voluntary. In addition, DeLeon has not asserted any ineffectiveness claims which have any bearing on the knowing and voluntary nature of his Plea Agreement and the waivers contained there in. Given DeLeon's statements on the record, which carry a strong presumption of verity, *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), that he had read and discussed the written Plea agreement with his counsel, that he understood the statutory and constitutional rights which he was waiving, that the Plea Agreement contained the entirety of his agreement with the Government, that he understood his possible range of punishment and how his sentence would be computed, that any sentence prediction that he had received from his counsel or the Government was a prediction, not a promise, and that he understood that he had waived his right to appeal and to file a post conviction proceeding, DeLeon has not shown that his plea was not counseled, knowing and voluntary. Thus, upon this record, DeLeon's plea agreement waiver of his right to collaterally attack his conviction with a § 2255 motion is enforceable. DeLeon's sentence does not exceed the statutory maximum - that is, the maximum sentence allowed by statute, *see* 18 U.S.C. § 2252A(a)(5)(B) (maximum term of life imprisonment), and does not constitute an upward departure from the Sentencing Guidelines.

*See United States v. McKinney*, 406 F.3d 744, 746-47 (5th Cir. 2005).  Because DeLeon's plea agreement, and waiver of appeal and collateral rights contained therein, were knowingly, voluntarily, and intelligently entered, because DeLeon has waived his right to bring a § 2255 motion, and because that waiver is valid and should be enforced, it serves as a bar to the instant § 2255 motion.  As such, the Government is entitled to summary judgment on DeLeon's claims pursuant to DeLeon's plea agreement waiver.[4]  *See Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000); *Davila v. United States*, 258 F.3d at 451-52; *United States v. Nguyen*, No. CR. 02-292, 2005 WL 14909 (E.D. La. Jan. 3, 2005); *Morua v. United States*, No. CRIM. A. H-02-572-8, 2005 WL 1745474 (S.D. Tex. July 25, 2005) (Hittner, J.); *United States v. Rohmfeld*, No. CR. C-03-259, 2006 WL 126636 (S.D. Tex. Jan. 15, 2006) (Jack, J.).  This § 2255 proceeding is subject to dismissal.

## B.     Motions to Reduce Sentence

DeLeon requests that his sentence be reduced based on his rehabilitation through courses in alcohol abuse,  substance abuse, heating ventilation and air-conditioning "HVAC," anger management, Bible studies, and numerous others.  Construing DeLeon's motion as a motion for correction or reduction of his sentence,  the Court looks to Rule 35 of the Federal Rules of Criminal Procedure,  which states:

---

[4] Under Rule 12 of the Rules governing § 2255 motions, the Federal Rules of Civil Procedure, including Rule 56, which provides for summary judgment, are generally applicable.  Under Rule 56(c), summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Here, because the evidence in the record shows that DeLeon's plea was knowing and voluntary, there is no genuine issue of material fact relative to the validity of DeLeon's guilty plea or his waiver of his direct appeal and waiver of pursuing collateral review under § 2255.  Summary judgment is therefore warranted on DeLeon's plea agreement waivers.

(a)  *Correction of a Sentence on Remand*.   The court shall correct a sentence that is determined on appeal under 18 U.S.C. § 3742 to have been imposed in violation of law,  to have been imposed as a result of an incorrect application of the sentencing guidelines,  or to be unreasonable,  upon remand of the case to the court -

    (1)  for imposition of a sentence in accord with the findings of the court of appeals;  or

    (2)  for further sentencing proceedings if,  after such proceedings, the court determines that the original sentence was incorrect.

(b)  *Reduction of Sentence for Substantial Assistance*.   If the Government so moves within one year after the sentence is imposed,  the court may reduce a sentence to reflect a defendant's subsequent substantial assistance in investigating or prosecuting another person,  in accordance with the guidelines and policy statements issued by the Sentencing Commission under 28 U.S.C. § 994.    The court may consider a government motion to reduce a sentence made one year or more after the sentence is imposed if the defendant's substantial assistance involves information or evidence not known by the defendant until one year or more after sentence is imposed.    In evaluating whether substantial assistance has been rendered,  the court may consider the defendant's pre-sentence assistance.   In applying this subdivision, the court may reduce the sentence to a level below that established by statute as a minimum sentence.

(c)  *Correction of Sentence by Sentencing Court*.   The court, acting within 7 days after the imposition of sentence,  may correct a sentence that was imposed as a result of arithmetical, technical, or other clear error.

Here,  there are no grounds on which DeLeon's sentence may be modified pursuant to Rule 35.  Because DeLeon never appealed his sentence to the Fifth Circuit Court of Appeals, Rule 35(a) does not apply in this case;  because DeLeon,  not the United States, is requesting a reduction, Rule 35(b) likewise does not apply in this case;  and because DeLeon was sentenced on January 26, 2006, and more than seven days have elapsed since his sentence, Rule 35(c) is inapplicable in this case.

Next,  construing DeLeon's request pursuant to 18 U.S.C. § 3582(c),  he is not entitled to relief.  18 U.S.C. § 3582(c) provides:

(c)  Modification of an imposed term of imprisonment.  -The court may not modify a term of imprisonment once it has been imposed except that-

> (1)  in any case-  (A)  the court,  upon motion of the Director of the Bureau of Prisons,  may reduce the term of imprisonment,  after considering the factors set forth in section 3553(a) to the extent that they are applicable,  if it finds that  (i)  extraordinary and compelling reasons warrant such a reduction;  or  (ii)  the defendant is at least 70 years of age,  has served at least 30 years in prison,  pursuant to a sentence imposed under section 3559(c),  for the offense or offenses for which the defendant is currently imprisoned,  and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community,  as provided under section 3142(g);  and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;  and (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure;  and

> (2)  in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o),  upon motion of the defendant or the Director of the Bureau of Prisons,  or on its own motion,  the court may reduce the term of imprisonment,  after considering the factors set forth in section 3553(a) to the extent that they are applicable,  if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Here,  DeLeon does not meet any requirements for a sentence modification under 18 U.S.C. § 3582(c) because (1) the Director of the Bureau of Prisons has not filed a motion to reduce DeLeon's sentence, (2) as discussed above, Rule 35 does not apply, and (3) there has been no lowering by the Sentencing Commission of his sentencing range.  As such, there is no legal basis upon which the Court could consider his requests.  Therefore, because the Court does not have the

20

authority to alter DeLeon's sentence, his Motions (Document Nos. 128 & 129) should be DENIED.[5]

### III.     Conclusion and Recommendation

Based on the foregoing, and the conclusion that DeLeon's guilty plea was knowing and voluntary and that DeLeon's waiver of his right to collaterally attack his conviction should be enforced,  it is

RECOMMENDED that the Government's Motion to Dismiss (Document No. 119) be GRANTED, that Movant DeLeon's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 109) be DENIED, and that this § 2255 proceeding be DISMISSED with prejudice.

It is further RECOMMENDED that Movant's Motions for Reduction of Sentence (Document Nos.  128 & 129) both be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982),

---

[5] To the extent that DeLeon wants to challenge the Bureau of Prisons' computation of his sentence, namely, that he be given good time credit for his successful completion of a drug treatment program, DeLeon should bring this claim in a motion pursuant to 28 U.S.C. § 2241. *See Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (a writ of habeas corpus pursuant to 28 U.S.C. 2241 is the appropriate vehicle in which " a sentenced prisoner attacks the manner in which a sentence is carried out or the prison authorities' determination of its duration) (citations omitted); *United States v. Gabor*, 905 F.2d 76, 77-78 n. 2 (5th Cir. 1990); *United States v. Garcia-Gutierrez*, 835 F.2d 585, 586 (5th Cir. 1998) (holding that claims for sentence credit to federal sentences are properly brought pursuant to § 2241).  Should DeLeon elect to file a § 2241 motion, he should file it in the district where he is incarcerated.  *See Pack*, 218 F.3d at 451.

*cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).

Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved

party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile*

*Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed

with the United States District Clerk, P.O. Box 61010, Houston, Texas 77028.

     Signed at Houston, Texas, this 21st day of July,  2008.


Frances H. Stacy
United States Magistrate Judge